IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Criminal No. 22-203 |
| JORGE GUERRERO, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

I. Introduction

Pending before the court is a motion in limine filed by the government to preclude defendant Jorge Guerrero ("Guerrero" or "defendant") from presenting evidence to the jury to support a duress defense (ECF No. 101). Guerrero filed a response in opposition to the motion (ECF No. 107); the government filed a reply (ECF No. 112); and Guerrero filed a surreply (ECF No. 115). The court held a hearing on May 28, 2025. (Transcript ("Tr."), ECF No. 117). At the conclusion of the hearing, the court instructed defense counsel to submit a supplemental written proffer, which was filed on June 6, 2025 (ECF No. 119). Also pending is defendant's motion to obtain a transcript of the sealed portion of the hearing held on February 18, 2025 (ECF No. 111). The government filed a response to the written proffer and motion to obtain transcript (ECF No. 121). Guerrero filed a reply (ECF No. 122) and the government filed a surreply (ECF No. 125). The motions are ripe for decision.

Guerrero is charged with possession with intent to distribute 500 grams or more of cocaine. (Indictment, ECF #25). From the proffered evidence, the court understands that Guerrero was provided a vehicle by a criminal organization and drove with his family from El

1

Paso, Texas, to Pittsburgh, PA. He transported cocaine in the vehicle. Defendant argues that he acted under duress. Jury selection and trial is scheduled for July 21, 2025.

II. Applicable Law

    A.    Burdens

The government's motion in limine asks this court to preclude Guerrero from offering evidence about the duress defense for the jury's consideration at trial. The court must be wary of usurping a defendant's constitutional right to trial by jury. *United States v. Grover*, 831 F. App'x 604, 606–07 (3d Cir. 2020) ("The ultimate determination of a witness's credibility is solely the province of the jury, not a judge.") (citing *United States v. Bailey*, 444 U.S. 394, 414–15 (1989)). As explained in *United States v. Baker*, 438 F.3d 749 (7th Cir. 2006):

> [A] court may preclude an affirmative defense by motion in limine only where the court accepts as true the evidence proffered by the defendant and finds that the evidence proffered by the defendant, even if believed, would be insufficient as a matter of law to support the affirmative defense. *United States v. Tokash*, 282 F.3d 962, 967 (7th Cir. 2002).

*Id.* at 753. *See United States v. Perkins*, No. 24-1109, 2025 WL 1009276 (3d Cir. Apr. 4, 2025) ("A district court must deliver a justification instruction if the defendant lays 'foundation in the evidence' for such a defense."). *Id.* at *5 (quoting *United States v. Sussman*, 709 F.3d 155, 178 (3d Cir. 2013)).

The standard is similar to the standard in civil cases for analyzing motions to dismiss or motions for summary judgment, i.e., the government must demonstrate that even construing all the proffered testimony, and reasonable inferences therefrom, in the light most favorable to Guerrero, the duress defense would fail as a matter of law. *See United States v. Vasquez*, No. CR

21-401, 2024 WL 3102248, at *6 (D.N.J. June 23, 2024) (if duress defense fails as a matter of law, evidence supporting that defense would be irrelevant and "barred by Rules 401 and 402 because it does not go to a fact of consequence in the case") (citation omitted).

At trial, Guerrero must establish the duress defense by a preponderance of the evidence. The court is aware that in *United States v. Santos*, 932 F.2d 244 (3d Cir. 1991), the Third Circuit Court of Appeals stated: "once a defendant introduces sufficient evidence of the elements of duress to implicate that defense, the defense should go before the jury, before which the government bears the burden to disprove duress beyond a reasonable doubt." *Id.* at 249 (citing *United States v. Mitchell*, 725 F.2d 832, 836 (2d Cir. 1983)). In *Dixon v. United States*, 548 U.S. 1 (2006), however, the Supreme Court held to the contrary: "we presume that Congress intended the petitioner to bear the burden of proving the defense of duress by a preponderance of the evidence." *Id.* at 17. This court is bound to apply the later Supreme Court precedent. Guerrero's counsel recognize that he bears the burden at trial to demonstrate the affirmative defense of duress by a preponderance of the evidence. Tr. at 4.

To defeat a pretrial motion in limine, the defendant must only make a proffer sufficient to satisfy each element of the duress defense. *Vasquez*, 2024 WL 3102248 at *6-7. In this case, counsel for Guerrero filed multiple briefs and made an oral proffer during the hearing on May 28, 2025. (Tr., ECF No. 111). Because the oral proffer was difficult to follow, the court instructed Guerrero to submit a post-hearing written proffer, which he did (ECF No. 119). At the May 28, 2025 hearing, the court permitted the government to introduce any evidence that would invalidate Guerrero's duress defense as a matter of law. The defense submitted a flash drive video of that post-arrest interview as an exhibit. Tr. at 16-18. The court explained that it was

3

proceeding by way of proffer at this stage of the case. Tr. at 74. The government submitted a transcript of Guerrero's post-arrest interview and, after conferring with defense counsel, submitted a stipulated proffer.

B. The Proffers

1. Guerrero's proffer

The court reiterates that, at this stage, it must view the proffer and reasonable inferences therefrom in the light most favorable to Guerrero. At the hearing, the court specifically stated that the proffer would include "submissions that have already been supplied by the defendant." Tr. at 72.

Guerrero lived with his wife and children in Socorro, TX (the El Paso, Texas area). He has other family members living in Mexico. The timeline of events is not entirely clear. In "early 2021," Guerrero responded to a Facebook ad for legal employment transporting currency between the United States and Mexico. He did two such jobs. In July 2021, Guerrero attempted to quit his employment as a courier. Tr. at 23. When he went to turn in his vehicle at the supposed office in Juarez, Mexico, on July 18, 2021, masked men, who identified themselves as members of Barrio Azteca (the "gang"), a criminal organization that operates in the United States and Mexico. Tr. at 23. Guerrero was familiar with the gang's reputation for extreme violence, including kidnapping and murder. On July 18, 2021, the masked men informed Guerrero they knew where he and his family lived and told him he had to continue working for the gang. (ECF No. 119 ¶ 7). The masked men beat, knifed and shot Guerrero twice on July 18, 2021.

After the assault, Guerrero was briefly in a hospital in Mexico. When he returned to Texas, his wound became infected and he was in the hospital until August 2021. After his discharge from the hospital he recuperated at home. (ECF No. 119 ¶ 13). Guerrero did not report the shooting to police due to, among other reasons, his concerns about the corruption of law enforcement by the gang and the risk of being killed if he reported the crime. Guerrero did not hear from the gang for several months. (ECF No. 119 ¶ 15).

In July 2022, a gang member contacted Guerrero again and instructed him to drive a vehicle from El Paso, TX, to Pittsburgh, PA. The gang member told Guerrero if he did not follow the gang's instructions, they would kill him and his family. (ECF No. 119 ¶ 16). Guerrero was instructed to pick up a vehicle from a Walmart parking lot.[1] Tr. at 31. Guerrero believed the gang would be tracking the vehicle via a GPS tracking device the gang told him was installed in the vehicle. Tr. at 31. Guerrero picked up the vehicle and began the trip the next day. (ECF No. 119 ¶ 16). Guerrero and his wife decided that she and their five children[2] should accompany him on the trip for their safety. Tr. at 31. He drove to Pittsburgh, PA, stopping overnight in Kansas City, MO. On July 19, 2022, Guerrero was instructed to meet an unknown man at a hotel in Pittsburgh and help him remove the vehicle's rear bumper. (ECF No. 119 ¶ 20). Police arrived, cocaine was recovered from a hidden compartment, and Guerrero was arrested. *Id.* Guerrero has never been a member of the gang (ECF No. 119 ¶ 23), and never knew the identities of the masked gang members who assaulted him in 2021 or the gang member who contacted him in July 2022, other than a nickname. (ECF No 119 ¶¶ 14, 16, 21).

---

[1] Guerrero believed the threat came from the same gang because it was the same vehicle and the same Walmart parking lot Guerrero used in July 2021. Tr. 31.
[2] The interview transcript submitted by the government reflects that one child remained in El Paso, TX with Guerrero's mother.

2. The government's stipulated proffer

The government proffered the testimony that would be provided by: (1) a Socorro police detective who on July 26, 2021, came to Guerrero's house in response to a medical call due to the infection in Guerrero's leg, but Guerrero did not ask for protection or provide information about how he was shot by members of the gang; and (2) a customs and border patrol task force officer about 32 interactions (including 4 secondary interactions) with Guerrero while he was crossing the border when returning from Mexico to El Paso, TX, during the period after the shooting until June 8, 2022. Tr. 65-69.

C. Elements

The affirmative defense of duress contains four elements:

(1) an immediate threat of death or serious bodily injury[3];

(2) a well-grounded fear that the threat will be carried out;

(3) no reasonable opportunity to escape the threatened harm; and,

(4) the defendant did not recklessly place himself in a situation in which he would be forced to engage in criminal conduct.

*Santos*, 932 F.2d at 249; *Grover*, 831 F. App'x at 607; Third Circuit Model Jury Instruction 8.03.

The elements of the duress defense must be evaluated in light of the circumstances. A number of decisions following *United States v. Contento-Pachon*, 723 F.2d 691, 694-95 (9th Cir. 1984), recognize that the "immediacy" and "escape" elements are context-specific and can be met through long-term threats to family members. In *Santos*, the Third Circuit Court of Appeals

---

[3] The seriousness of the threatened harm does not appear to be disputed by the government. Guerrero avers that if he did not perform the drug delivery, the gang threatened to kill him and his family.

noted: "The Second and Ninth Circuits both recognize that a defendant may establish duress as a result of threats against family members." *Santos,* 932 F.2d at 252 (citing *Contento-Pachon*, 723 F.2d at 694-95). In *Santos*, the duress defense was presented to the jury. The court evaluates each element in light of Guerrero's proffer.

1. Immediacy

One of the government's primary arguments is that Guerrero failed to establish "immediacy." The government argues there was a one-year gap between the incident in which Guerrero was shot in Mexico and his arrest in Pittsburgh, PA, and Guerrero had numerous encounters with border patrol and law enforcement agents during the interim. The government asserts that Guerrero had only a "generalized fear" of "unknown persons." (ECF No. 121 at 6).

The concept of immediacy does not simply measure the passage of time, but tests the connection between the threat and the defendant's conduct. In *United States v. Oz*, No. CR1300273SRNFLN, 2017 WL 480389 (D. Minn. Feb. 3, 2017), the court explained:

> the threat a defendant faces must be "immediate" in the sense that it must occur in close temporal proximity to the subsequent bad acts that the defendant engages in because of the threat. *United States v. Morales*, 684 F.3d 749, 756 (8th Cir. 2012). However, where a defendant's persecutor evidences the ability to easily "reach" the defendant—e.g., the defendant is being monitored or watched by those who threatened him—a threat may be immediate to crimes committed by the defendant in the future because the ability to quickly "make good" on the threat remains.

*Id.* at *7. Similarly, the court explained in *United States v. Torres-Gallegos*, No. R1903105001, 2021 WL 5811803 (D. Ariz. Dec. 7, 2021):

> To establish the element of immediacy, a defendant must make a prima facia showing that the defendant completes the illegal action under a threat of immediate harm to the defendant or the defendant's family." *United States v. Vasquez-Landaver*, 527 F.3d 798, 802 (9th Cir. 2008). "Under this test, the threat to the defendant or the defendant's family must be 'present, immediate, or

impending[.]' " *Id.* (quoting *United States v. Contento-Pachon*, 723 F.2d 691, 694 (9th Cir. 1984)). For a threat to be immediate, "a threat must be specific: 'A veiled threat of future unspecified harm will not satisfy this requirement.'

*Id.* at *3. There must be a specific threat, not a "generalized fear." *Id.* In addition, the threat must compel the defendant to commit the illegal action (i.e., the crime itself) – threatening a defendant not to testify at trial would not suffice. *Id.*

It is not necessary that someone be standing by to immediately enforce the threat. Immediacy can be demonstrated where the threatening party clearly indicates that harm to the victim's family "would be the *specific* and *direct* consequence of refusing to obey the [threatening party's] commands." *United States v. Chi Tong Kuok*, 671 F.3d 931, 948 (9th Cir. 2012) (emphasis in original) (holding that duress defense should have been presented to the jury). Generic, vague or undetailed threats will not suffice. *Id.*

In *Contento-Pachon* (involving a drug mule), the Ninth Circuit Court of Appeals reversed a district court's exclusion of a duress defense, holding that a jury should decide whether threats to the defendant's wife and child, and fears that Colombian and Panamanian police were corrupt, gave the defendant "a well-grounded fear of immediate harm with no opportunity to escape." *Contento-Pachon*, 723 F.2d at 694-95. The drug dealer knew private details about the defendant's family and the location of his residence and the defendant contended he was watched by an accomplice of the drug dealer at all times during the trip. *Id.*

In *Oz*, 2017 WL 480389, the threats occurred years earlier. The court explained that a threat is "immediate" if the persecutor evidences the ability to easily reach the defendant and make good on the threat, for example, if the defendant is being watched. *Id.* at *7. The court reiterated that credibility arguments were for the jury to decide. *Id.* at *9. The court denied the

government's motion in limine to preclude a duress defense.

In *Chi Tong Kuok* (reversing exclusion of a duress defense), the persecutor's threats spanned 10 years, but were "immediate" because the persecutor demonstrated the ability to locate and monitor defendant's family and threatened that harm to the defendant's wife would be the specific and direct consequence of his failure to obey. The court explained that defendant met his burden to set forth a prima facie case for the duress defense and a jury should decide whether defendant's fear was reasonable and if his family was still in danger. *Chi Tong Kuok*, 671 F.3d at 948.

Here, viewing the proffer and reasonable inferences therefrom in Guerrero's favor, a reasonable jury could conclude the threat was "immediate." As in *Contento-Pachon,* and *Chi Tong Kuok*, the threat to Guerrero in July 2022 came from an organization – a drug gang -- not an individual. There was a specific threat, not a generalized fear, even though Guerrero did not know the individual identity of his attackers in 2021 or the identity of the gang member who made the threat in July 2022. The Barrio Azteca gang was known to Guerrero to be violent and ruthless and to have the capability to make good on its threats. Guerrero proffered that there was a specific and direct threat that if he did not make the trip to Pittsburgh in July 2022, he and his family would be killed. Guerrero began his journey the next day. Some of Guerrero's family members and a minor child remained in Mexico and El Paso, TX, within the gang's reach. Guerrero was told that members of the gang would be closely monitoring his trip with a GPS tracking device. Guerrero would receive further instructions from the gang when he arrived in Pittsburgh, PA, which supports the inference that the gang's reach extended to Pittsburgh, PA. ECF No. 119 ¶ 16. A jury could conclude that Guerrero reasonably believed that the gang would

immediately kill him or his family remaining in El Paso, TX, and Mexico if he escaped or went to the police with the gang's vehicle. ECF No. 119 ¶ 18. Accepting the proffer as true, the threatened harm was serious and immediate, i.e., the gang would monitor Guerrero and kill him or his family if he did not comply with the gang's instructions to deliver the drugs to Pittsburgh, PA.

### 2. Well-grounded fear

The fear must be "well-grounded." The relevant inquiry is whether the defendant had a "well-grounded fear that the threat would be carried out." *Ochoa*, 2024 WL 3059876 at *2. This element considers, in part, the capacity of the threatening party to carry out its threats. *Chi Tong Kuok,* 671 F.3d at 948. In many of the decisions relied on by the government, the threats came from individuals. Criminal organizations pose a different kind of danger than an individual. In *Chi Tong Kuok,* the alleged threatening party was the Chinese intelligence service. In *Contento-Pachon,* as in this case, the alleged threatening party was a drug gang. A threat from an organization cannot be easily evaded by time and distance, particularly if the identities of the organization's members are unknown.

Viewing the proffer in defendant's favor, Guerrero's fear was "well grounded." The gang had a history of violence and the ability to use force in the United States and Mexico. Gang members beat, knifed and shot Guerrero in July 2021, when he attempted to stop working for the gang. A jury could infer that Guerrero did not report his own victimization to the police due to his fear of the gang. *See Blount v. Napoli*, No. 09-CV-4526 KAM, 2012 WL 4755364, at *9 (E.D.N.Y. Oct. 5, 2012) ("prior threats and assaults may support a claim of duress at the time of

the crime only when combined with a present and immediate ability to act and a threat of harm is imminent"); *Oz*, 2017 WL 480389, at *7 ("testimony that a defendant was threatened and beaten for not doing as she was told on earlier occasions does satisfy the pretrial prima facie standard.") (citations omitted).

3. Reasonable opportunity

The defendant must have a "reasonable" alternative to commission of the crime. In *United States v. Paolello*, 951 F.2d 537 (3d Cir. 1991), the court explained that there must be a "reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm)." *Id.* at 540. In other words, Guerrero must have been able to (1) refuse to drive the drugs to Pittsburgh, PA; and (2) to escape the threatened consequences. In *Chi Tong Kuok,* the court commented that "the possibility of packing up and moving out of the dangerous environment, abandoning one's work and displacing one's entire family, does not necessarily present a reasonable opportunity for escape." *Chi Tong Kuok,* 671 F.3d at 949. In addition, even if an individual is able to extricate himself from harm, cooperating with law enforcement may not be a reasonable alternative if his family is still in danger. *Id.* at 949-50 (citations omitted).

Viewing the proffer and reasonable inferences therefrom in his favor, a jury could conclude that Guerrero did not have a "reasonable" alternative to driving to Pittsburgh after he received the call in July 2022. He believed the gang was tracking his location with a GPS device. Some family members remained in El Paso, TX, and Mexico within reach of the gang. A jury could also conclude that Guerrero's failure to report the July 2021 attack on him to law enforcement in the hope that the gang would not contact him again was reasonable. He did not know the identities of the specific gang members who threatened him, so a report to law

enforcement was not likely to be effective and he believed law enforcement was corrupt. He believed that the gang had contacts within law enforcement in El Paso and Mexico. As noted in the decisional law, a person in Guerrero's circumstances would not necessarily be required to uproot his entire family to place himself beyond the gang's reach.

4. Recklessly placing himself in a situation

This factor evaluates whether a defendant recklessly placed himself in a situation in which he would be forced to engage in criminal conduct. For example, in *United States v. Grover*, No. 1:18-CR-00046, 2019 WL 1437904, at *3 (M.D. Pa. Apr. 1, 2019), aff'd on other grounds, 831 F. App'x 604 (3d Cir. 2020), the court found this element was met where the defendant voluntarily participated in three uncharged burglaries with certain people in the preceding weeks and agreed to give the same group a ride to the burglary at issue. In *Paolello*, the court held that going "to a bar known as a place where 'bad' people hang out in the early morning hours" did not invalidate the duress defense. *Paolello*, 951 F.2d at 541. The court qualitatively distinguished that legitimate conduct from a situation in which "a defendant enters a premises to commit a crime and then is confronted with an armed occupant." *Id.*

Viewing the proffer in his favor, a jury could conclude that Guerrero did not recklessly place himself in a bad position. He answered a job listing for legitimate, lawful employment as a courier of money for currency exchange houses between the United States and Mexico. Tr. at 25. When he tried to quit, he was told by masked men they were members of the gang and they beat, knifed and shot him. Guerrero did not report the incident to police, hoping that he would not again be contacted by the gang. Guerrero maintains he was never a gang member.

5. Summary of Defendant's Proffer and the elements

In sum, Guerrero's proffer and the reasonable inferences therefrom, viewed in the light most favorable to him, addresses each element of the prima facie case needed to make out a duress defense. At trial, it will be Guerrero's burden to convince the jury that he acted under duress by a preponderance of the evidence. Even accepting the government's contention that Guerrero is "changing and evolving his facts" over the course of litigating this issue (ECF No. 121 at 2), those factual discrepancies will be fodder for cross-examination at trial, but do not invalidate the proffer as a matter of law. Guerrero's credibility is a matter for the jury.

III.    Government's arguments

The government argues that the duress defense fails as a matter of law. The government's argument is premised on the interplay between the "immediacy" and "escape" elements, i.e., the government reasons there was no immediacy between the threat and the criminal conduct, such that Guerrero had a reasonable opportunity to escape the threatened harm by notifying law enforcement during any of his numerous encounters with them after July 2021.

The government's citations to decisions involving defendants who had the ability to distance themselves from a particular person are not persuasive. The government contends that Guerrero had a reasonable opportunity to escape, relying heavily on *United States v. Ochoa*, No. 22-2968, 2024 WL 3059876, at *2-3 (3d Cir. June 20, 2024), cert. denied, 145 S. Ct. 401 (2024), which denied a duress defense where (among other reasons) the defendant sat alone in a car for five minutes. In that case, however, the defendant was not facing a threat from a criminal organization.

As explained above, *infra* at 7-10, the threat posed by a criminal organization is different in kind than a threat posed by an individual actor. As in the decisions involving criminal organizations discussed above, Guerrero could believe the gang could project force over time and long distances and the threat could not be evaded simply by avoiding a known individual. In this case, Guerrero attempted to walk away from the gang and was shot twice. He had no contact with the gang for almost a year after he was shot, but the gang reached out to him again. Guerrero did not know the individual identities of the persons who shot him in 2021, or the person who called him in 2022, but he believed they were all part of the Barrio Azteca gang. A gang member told him he would be monitored by GPS tracker during his trip to Pittsburgh. Guerrero believed the gang had the motive and means to inflict harm on him and his family, such that he did not have a reasonable alternative to following the gang's instructions.

The government posits that Guerrero should have confided in law enforcement. That argument must be resolved by the jury. *See United States v. Sanchez*, 659 F.3d 1252, 1260 (9th Cir. 2011) (jury could believe testimony that "American authorities would not have been able to help him or his family living in Mexico, so telling them he had been forced to transport the drugs would serve no purpose"); *Contento-Pachon*, 723 F.2d at 694 ("The trier of fact should decide whether one in Contento-Pachon's position might believe that some of the Bogota police were paid informants for drug traffickers and that reporting the matter to the police did not represent a reasonable opportunity of escape.").

The government's citations to decisions involving felons in possession of firearms are not persuasive. Although the duress defense is technically available to felons who contend they armed themselves out of fear of another person, the defense is extraordinarily limited in those

circumstances. *United States v. Alston*, 526 F.3d 91, 95 & n. 5 (3d Cir. 2008) (quoting *United States v. Perez*, 86 F.3d 735, 737 (7th Cir. 1996) ("[O]nly in the most extraordinary circumstances ... will th[is] defense entitle the [person prohibited from possessing a weapon] to arm himself in advance of a crisis merely because he fears, however sincerely and reasonably, that he is in serious danger of deadly harm."); *id.* at n. 7 ("*see also Paolello*, 951 F.2d at 541 ("[A]n interdicted person may possess the firearm no longer than absolutely necessary." (citations omitted)); *Perez*, 86 F.3d at 737 (finding a justification defense "will rarely lie in a felon-in-possession case unless the ex-felon, not being engaged in criminal activity, does nothing more than grab a gun with which he or another is being threatened ..."); *United States v. Mahalick*, 498 F.3d 475, 479 (7th Cir.2007) ("In practice, the defense has only applied to the individual who in the heat of a dangerous moment disarms someone else, thereby possessing a gun briefly in order to prevent injury to himself ..., or to another."). In *Perez*, the court explained the reason for this limitation. The court recognized that upon release from prison, many felons "continue to live in dangerous neighborhoods and consort with some dangerous people" and commented: "If ex-felons who feel endangered can carry guns, felon-in-possession laws will be dead letters." *Perez*, 86 F.3d at 737. The circumstances in this case are factually distinct, as Guerrero is not a felon and did not possess a firearm.

  The government points to numerous contradictions and inconsistencies in Guerrero's interview by law enforcement when he was arrested and the various filings with respect to the details of Guerrero's proffer. Those inconsistencies go to Guerrero's credibility and will be fodder for cross-examination at trial. At this stage, the proffer and reasonable inferences therefrom must be viewed in the light most favorable to Guerrero.

IV.     Motion for Transcript

Defense counsel seeks access to the sealed portion of the transcript of the hearing held on February 18, 2025. The motion seeks disclosure of the sealed transcript only to the undersigned defense counsel (ECF No. 111). The government opposes the motion at this time, until it obtains further explanation from defense counsel about its intended use (ECF No. 121).

The government did not point to any harm from its disclosure, if limited to defense counsel. The court reviewed the sealed portion of the transcript. Defense counsel participated in the hearing -- including the sealed portion at issue. This motion, therefore, does not seek disclosure of any information not already known by defense counsel. The transcript will remain sealed on the public docket and will be subject to the protective order agreed upon by the parties in this case (ECF No. 77). The narrow relief requested in the motion (ECF No. 111) will be granted.

Conclusion

The motion in limine filed by the government to preclude Guerrero from presenting evidence to support a duress defense (ECF No. 101), will be denied without prejudice for government to argue that jury should not be instructed on the duress defense based upon the actual evidence presented at trial. *Oz*, 2017 WL 480389 at *6. The motion to disclose the sealed portion of the February 18, 2025, hearing to defense counsel (ECF No. 111) will be granted and the disclosure will be subject to the protective order entered in this case.

An appropriate order will be entered.

By the court,

Date: July 2, 2025

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Senior United States District Judge